[Sac. No. 1048.   Department Two.—May 2, 1904.]

## R. E. CAVANAUGH, Respondent, v. JAMES WHOLEY, Appellant.

RIGHT OF WAY—PRESCRIPTION—ADVERSE USER OF LAND—LOSS OF TITLE. —A right of way by prescription may be acquired by one in adverse possession of the servient tenement.  Where the title to land adversely possessed was not acquired, but was lost under patent to a railroad company, and its contract of sale and deed to a third person, whereby any merger of the right of way in the title was prevented, the adverse user of the right of way for the full period of prescription confers the right to use the same for the benefit of other lands owned by the adverse claimant.

ID.—MAXIM—GREATER ADVERSE CLAIM INCLUDES THE LESS.—Under the maxim, *Omne majus continet in se minus*, the adverse claim to use the right of way situated across the land adversely possessed was necessarily included in the general adverse claim to the land; and where the title to the land did not vest in the adverse claimant by prescription or otherwise, and the intention is apparent to appropriate the land to the use of the right of way, the claim thus to use part of it will, as part of the general claim to the land, be adverse to the owner.

ID.—TEMPORARY OBSTRUCTION BY STRANGER.—A temporary obstruction of the roadway by a stranger on other land for part of one year cannot inure to the benefit of the owner of the land across which it extends, or materially affect the user of such way, where there was no intention of abandonment thereof.

ACTION TO QUIET TITLE—DEFENSES—ORAL AGREEMENT—CONFLICT OF EVIDENCE—SUPPORT OF FINDING.—In an action to quiet title to land claimed under title from a railroad company, where the answer of the defendant set up an oral agreement with plaintiff's predecessor in interest to purchase the land from the railroad company for their joint benefit, and the evidence is conflicting as to the existence of such agreement, a finding against its existence cannot be disturbed on appeal.

ID.—AGREED BOUNDARY—LANDS NOT CONTIGUOUS.—A defense of agreed boundary has no application where the lands of the parties are not contiguous.

ID.—PREFERRED RIGHT OF PURCHASE FROM RAILROAD COMPANY—ACCEPTANCE NOT SHOWN—OCCUPANCY.—The defense of a preferred right of the defendant to purchase from the railroad company is not tenable where there is no pretense of acceptance by the defendant of the company's offer to sell, by application to purchase or by occupation with such intent, otherwise than to purchase under oral

agreement with a third party, which agreement was found not to exist.   Mere occupancy, in the absence of privity with the purchaser, did not affect the right of the railroad company to sell or of the purchaser to buy the land.

APPEAL from an order of the Superior Court of Siskiyou County denying a new trial.   J. S. Beard, Judge.

The facts are stated in the opinion.

James D. Farraher, and James D. Fairchild, for Appellant.

The evidence conclusively establishes the right of way. (*Cheney* v. *O'Brien,* 69 Cal. 200; *Humphreys* v. *Blasingame,* 104 Cal. 42; *Kripp* v. *Curtis,* 71 Cal. 66.)

Gillis & Tapscott, for Respondent.

So long as the title was in the United States, no prescriptive right of way could be acquired.   The settlement of the estate of Joseph Cavanaugh without any claim to the land distributed concluded the defendant.   (Code Civ. Proc., secs. 1597-1607.)

SMITH, C.—Appeal from an order denying defendant's motion for a new trial.   The suit was brought to quiet title to the southeast quarter of section 29 of the township described in the complaint.   The plaintiff deraigns title under a patent from the United States to the Central Pacific Railroad Company, of date July 27, 1895, and a deed, of date July 27, 1899, from the grantee to plaintiff, based on a contract of sale to Joseph Cavanaugh, deceased, of date July 22, 1889; in which year, and presumably before the date mentioned, the title of the railroad company became vested by the location of its line.   (*Jatunn* v. *Smith,* 95 Cal. 154.)

The principal defense rests upon an alleged oral agreement made in the year 1874 between the defendant and Joseph Cavanaugh; who were then owners or occupants of lands abutting on the land in question—the lands of the latter lying on the *east,* those of the defendant on the *west.*   By the terms of this contract, as alleged, it was agreed the parties should inclose and occupy, Cavanaugh the eastern, the defendant the western, portion of the land in question; and that when the land should come into market, it should be purchased in

the name of one of them for the benefit of both; and the land occupied by the other, conveyed to him by the purchaser, on payment of his part of the purchase money. Accordingly, it is alleged in the answer, a fence was built on the dividing-line agreed upon, and possession of their respective parts of the land taken and ever since maintained by the parties; and in the year 1889, in pursuance of the contract, the above-mentioned application to purchase the land was made to the railroad company by Cavanaugh. The same facts are set out in a cross-complaint containing two counts, but each adding somewhat to the statement:—the first alleging that the line of fence was agreed upon in advance of its construction, and thereafter, until just before the beginning of the suit, continuously recognized by the parties interested as the boundary between the lands of the parties; the second, that the defendant entered upon the occupancy of the land in question relying upon the general offer of the railroad company to sell to actual occupants, and with intention to purchase the same, but was induced to forego such intention as to the eastern part of the land by the proposition of Cavanaugh to enter into the alleged oral agreement, which was accepted, as above stated. And in connection with these matters, it is further alleged in each count, and in the answer, and is in effect admitted, that defendant has offered to pay his part of the purchase money, and demanded a deed; which plaintiff has refused to make. Finally, in an amendment to the answer, the claim is made to a right of way by prescription over the part of the land in controversy occupied by the defendant.

It will be seen, therefore, summarizing the defendant's pleadings, that four affirmative defenses or causes of action are set up, namely: (1) The alleged oral agreement; (2) the alleged establishment and maintenance of the fence by the parties as an agreed boundary-line; (3) the alleged preferred right to purchase from the railroad company; and (4) the alleged right of way. Upon each of these issues the findings of the court are adverse to the defendant; and it is claimed by the appellant, as to each of them, that the evidence was insufficient to justify the findings.

The last point will be first considered. It involves two questions,—the one of fact, the other of law. As to the former, the court finds that the defendant has not for twenty

years, or for any time, used the road claimed as a right of way either "openly, or notoriously, or peaceably, or exclusively, or continuously, or adversely," etc. But—unless as to the adverse nature of the use, which will be considered presently —the contrary plainly appears from the evidence. The road as it now stands, it appears, is a plain one, and according to the defendant's testimony was in existence in 1874, and for several years prior to that date; and it has continued to exist ever since unchanged, "except perhaps at the creek crossing where it washed away some." During all this period, he says he has openly and habitually used it as a way between his lands adjacent to the land in question, and except during one year, when the road was obstructed, on land beyond the land in controversy, by one Clark—who had bought some land there, but was bought out by the defendant in the following year—without interruption. On this obstruction much stress is placed by the defendant's counsel, but the act of Clark could not inure to the benefit of plaintiff; nor was the temporary interruption of the use without intention of abandonment in any way material. (*Ladyman* v. *Grave,* L. R. 6 Ch. A. 768.) There is nothing in the case to lead us to doubt the defendant's account of the matter, and it is confirmed by the peculiar location of the fence; which does not conform to the line between the east and west halves of the quarter-section, but is so located as to conform to the road and to leave it outside of Cavanaugh's inclosure. And as the facts testified to were all of an open and notorious character, and readily to be disproven if false, the failure of the plaintiff to introduce any evidence to the contrary must be taken as a still stronger confirmation. (Code Civ. Proc., sec. 1963, subds. 5, 6.) There can be no doubt, therefore, that the road has been continuously used as such during all the period referred to; and in such a manner as to indicate unmistakably the intention of the defendant permanently to appropriate it to that use as a means of communication between his lands lying to the west and to the northeast of the land in question. The defendant also testifies as to the adverse nature of his claim, and is not contradicted.

This leaves us to consider, therefore, the general question, whether a right of way by prescription can be acquired by one in adverse possession of the servient tenement; and, as it

is clear that of the two elements of prescription, *user* and *adverse claim*, the former may coexist with such possession, this question must be regarded as relating only to the latter. The precise question to be considered is, therefore, whether there can be a claim of right adverse to the owner by one in such possession; and this question, we think, cannot be otherwise answered than in the affirmative. For not only may there be a claim of such right distinct from the claim to possession—as, for example, where there is such claim, and the possession is afterwards acquired (Code Civ. Proc., sec. 1963, subd. 32), but where there is no such antecedent claim, and the user of the way is such as to show an intention permanently to devote the land to the use, the adverse claim to the land will necessarily include the claim to use the land for the particular use indicated, and will thus constitute an adverse claim to the right of way used. Thus, to illustrate, if one in adverse possession of land of another should construct a reservoir on the land occupied, with a canal or pipe-line leading therefrom to his lands in the vicinity, and should during a long period habitually use it for that purpose, and more especially if it could be put to no other use, this would clearly indicate his intention to permanently use the site of the reservoir and canal exclusively for that purpose; and, under the maxim, *Omne majus continet in se minus*, the claim thus to use it would be necessarily involved in the general adverse claim to the land. (Broom's Legal Maxims, 174.) Where, indeed, the title to the land becomes vested in the party in possession, either by prescription or otherwise, all adverse claims to easements must, from the nature of the case, cease; for one cannot have an adverse claim against one's self. But this reason does not apply to the case before use, and hence unless there is a merger, if the intention to appropriate the land to the use be shown, the claim to the land will include the claim thus to use part of it; and this, as part of the general claim, will be adverse to the owner.

The other points in the case may be briefly disposed of. As to the alleged oral agreement, the evidence is conflicting, and the finding therefore cannot be disturbed. As to the claim of agreed boundary, the rule as to practical location has no application, where the lands of the parties are not contiguous. (*Cavanaugh* v. *Jackson*, 91 Cal. 580.) And, finally, as to the

claim of a preferred right in the defendant to purchase from the railroad company, there is no pretense of acceptance by the defendant of the company's offer to sell—either by application to purchase or by occupation with such intent—otherwise than through Cavanaugh under the alleged agreement; as to which the finding is adverse to him. Nor in the absence of any privity between him and Cavanaugh did his mere occupancy affect the right of the company to sell, or of Cavanaugh to buy the land. It will be proper to add that we think the court went beyond a just discretion in allowing the leading question to the plaintiff when on the stand objected to by the appellant.

We advise that the order appealed from be reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

For the reasons given in the foregoing opinion the order appealed from is reversed and the cause remanded for a new trial on the issue of appellant's alleged right of way.

　　　　　　　　Henshaw, J., Lorigan, J., McFarland, J.