[Civ. No. 22189.   Second Dist., Div. Three.   Nov. 20, 1957.]

JAMES W. DONLON, Respondent, v. EVELYN DONLON, Appellant.

James A. Starritt for Appellant.

James J. McCarthy for Respondent.

WOOD (Parker), J.—Plaintiff Mr. Donlon filed an action for partition of two parcels of real property. Defendant Mrs. Donlon filed a cross-complaint wherein she sought partition of the property and a money judgment for $5,991.36 against plaintiff and a lien therefor upon the portion of the property awarded to plaintiff. Defendant Mrs. Donlon appeals from the judgment of partition (interlocutory) wherein it was ordered that the property be sold and the proceeds divided equally between plaintiff and defendant, after paying certain encumbrances, taxes, expenses, and fees, and after paying $1,491.36 to Mrs. Donlon. The judgment also provided that $66.55 costs should be paid to plaintiff.

The record title to the property is in the names of plaintiff and defendant as joint tenants. The parties were married in 1948. Mrs. Donlon obtained an interlocutory judgment of divorce in 1955. In the divorce action the court found that

five parcels of real property, the record title of which was in the names of plaintiff and defendant as joint tenants, were the separate property of Mrs. Donlon. Those parcels did not include the two parcels involved here. Also, in the divorce action, the court found that Mr. and Mrs. Donlon "own as joint tenants" two other parcels of real property. These are the two parcels involved here.

In the present action, Mrs. Donlon alleged in her cross-complaint that she and Mr. Donlon are the owners in joint tenancy of the two parcels, that she paid $9,000 from her separate funds on the purchase price of one of the parcels (referred to as Parcel 2), and that she paid $2,982.72 from her separate funds on an encumbrance on Parcel 2 and for improvements, repairs and taxes on both parcels. In addition to seeking partition, she sought judgment against Mr. Donlon for $5,991.36 (being one-half of the $9,000 and one-half of the $2,982.72), and she sought a lien for that amount upon the portion of the property awarded to plaintiff.

The court found that Mr. Donlon and Mrs. Donlon are the owners, as joint tenants, of the two parcels; the parcels cannot be partitioned in kind and must be sold; the $9,000, paid on the purchase price of Parcel 2, was not paid from separate funds of Mrs. Donlon but it was paid from the proceeds of a sale or exchange of joint tenancy property owned by Mr. and Mrs. Donlon as joint tenants; Mrs. Donlon expended $2,982.72 for debts, taxes, and expenses on both parcels, as alleged in her cross-complaint, and she is entitled to $1,491.36 (one-half of $2,982.72) from Mr. Donlon's share of the proceeds of the sale.

Appellant (Mrs. Donlon) contends that she should have been awarded an additional amount of $4,500, being one-half of the down payment of $9,000 (on Parcel 2) which she asserts was paid from her separate property. It is conceded by appellant that both parcels here involved are owned in joint tenancy by the parties. As above shown, she alleged in her cross-complaint that she and Mr. Donlon are the owners in joint tenancy of the two parcels here involved. Also, she states in her brief that it is admitted by the pleadings that both parcels are joint tenancy property. The court found that the two parcels are owned by Mr. and Mrs. Donlon as joint tenants. The court also found that the down payment of $9,000 on Parcel 2 was not paid from her separate funds, but it was paid from the proceeds or exchange of joint tenancy property owned by Mr. and Mrs. Donlon as joint

tenants. The joint tenancy property which was exchanged in the purchase of Parcel 2, as referred to in that finding, was known as the Grand Avenue property. The record title to the Grand Avenue property was in the names of Mr. and Mrs. Donlon as joint tenants. Parcel 2 was purchased by transferring the Grand Avenue property to the seller on the basis that the Grand Avenue property was of the value of $9,000, and by assuming an existing trust deed obligation in the approximate amount of $16,000. It thus appears that the down payment was not made from the separate property of Mrs. Donlon, unless the Grand Avenue property which was also in joint tenancy was in fact the separate property of Mrs. Donlon. ■ Since the record title to the Grand Avenue property was in the names of Mr. and Mrs. Donlon as joint tenants, it is presumed that that property was *owned* by them as joint tenants. It is not to be presumed that it was the separate property of Mrs. Donlon. The burden of proof was upon Mrs. Donlon to prove her allegation that the down payment of $9,000 on Parcel 2 was paid from her separate property; and since the down payment was made by the exchange of the Grand Avenue property, the burden of proof was on her to prove that the Grand Avenue property was her separate property. The trial court in the present action did not determine that the Grand Avenue property was the separate property of Mrs. Donlon. The court, in the divorce action, did not determine that the Grand Avenue property was the separate property of Mrs. Donlon. That property had been transferred as a part of the purchase price of parcel 2 before the decision in the divorce action and, of course, that property was not one of the five parcels which the court therein found were the separate property of Mrs. Donlon. It thus appears that it has not been judicially determined that the Grand Avenue property, which was of record in the names of Mr. and Mrs. Donlon as joint tenants, was the separate property of Mrs. Donlon. This court cannot conclude that that property, which represented the down payment, was her separate property.

Appellant Mrs. Donlon seems to argue that it was adjudicated in the divorce action that the $9,000 down payment on Parcel 2 was her separate property; and that by reason of the decision in the divorce action Mr. Donlon is estopped to deny that the $9,000 down payment was Mrs. Donlon's separate property. As above stated, the Grand Avenue property had been transferred as a part of the purchase price of

Parcel 2 before the decision in the divorce action. In the original complaint in the divorce action Mrs. Donlon alleged that all the real property which was of record in the names of the parties as joint tenants was her separate property. (That complaint did not state the legal description of any of the property.) At the close of the trial in that action, Mrs. Donlon filed an ''Amended Complaint to Conform to Proof,'' and she alleged therein that five parcels which were of record in the names of the parties as joint tenants were her separate property, and she alleged that the parties own two other parcels in joint tenancy. (The amended complaint stated the legal description of the parcels.) Parcel 2 was referred to in the amended complaint as one of the two other parcels which were owned in joint tenancy. The decision in the divorce action was that five parcels of real property were the separate property of Mrs. Donlon, even though the record title to those parcels was in the names of both parties as joint tenants. Those five parcels did not include the Grand Avenue property or the two parcels involved here. A further part of the decision in the divorce action was that the parties own two other parcels of real property in joint tenancy. One of those two parcels is Parcel 2. In view of Mrs. Donlon's allegations in her amended complaint asserting that five parcels which were of record in joint tenancy were her separate property, and asserting further that the two other parcels (including Parcel 2) were owned by the parties in joint tenancy (without asserting that the two parcels were her separate property), it is clear that she did not allege in the divorce action that Parcel 2 was her separate property. In view of the findings in the divorce action which were the same as her allegations, it is clear that the court did not find that Parcel 2 was her separate property.

(About two days after the interlocutory judgment of divorce was entered, Mr. Donlon commenced the present action for partition of the two parcels which the court, in the divorce action, found were owned by Mr. and Mrs. Donlon as joint tenants. Mr. Donlon appealed from the portion of the interlocutory judgment of divorce wherein it was adjudged that the five parcels were the separate property of Mrs. Donlon. On that appeal the judgment was affirmed. *Donlon* v. *Donlon*, 140 Cal.App.2d 428 [295 P.2d 51].)

It was not adjudicated in the divorce action that Parcel 2 was the separate property of Mrs. Donlon. Mr. Donlon was not estopped to deny that the $9,000 down pay-

ment on Parcel 2 was the separate property of Mrs. Donlon.

In any event, regardless of whether there was joint or separate ownership of the Grand Avenue property, it was conceded, as above shown, that Parcel 2 is owned by the parties as joint tenants. Mrs. Donlon does not claim that Parcel 2 is her separate property, but she asserts in effect that the down payment of $9,000 was her separate property and therefore in partitioning that parcel one-half of the $9,000 should be paid to her from such portion of the proceeds as might be awarded to Mr. Donlon. In other words, she asserts that he should account to her for one-half of the down payment.

■ "[T]he taking of title in the name of the parties as joint tenants was tantamount to a valid and binding contract that the property should thereafter be held in joint tenancy with all the characteristics of such an estate." (*Barba* v. *Barba*, 103 Cal.App.2d 395, 396 [229 P.2d 465].) ■ " 'A joint tenancy is one estate and in it the rights of the spouses [joint tenants] are identical and coextensive.' " (*Ibid.*) ■ "By virtue of the nature of the title by which the property is held by the parties, each is the owner of an undivided one-half interest therein in his separate right." (*Ibid.*) As above stated, it was not found that the down payment was paid from Mrs. Donlon's separate property, but it was found that it was paid from other joint tenancy property. ■ Even if the down payment on Parcel 2 had been paid from Mrs. Donlon's separate property, the fact that the deed was taken in joint tenancy raised an inference that a gift was intended. (See *Fitzgerald* v. *Fitzgerald*, 114 Cal.App.2d 549, 551 [250 P.2d 328] ; *Borgerding* v. *Mumolo*, 153 Cal.App.2d 821, 824 [315 P.2d 347].) ■ Where title to real property is taken in the names of the parties as joint tenants the presumption of joint tenancy cannot be rebutted solely by evidence concerning the source of the funds used to purchase the property. (See *Borgerding* v. *Mumolo, supra*, p. 826.) In the present case Mrs. Donlon testified that she bought Parcel 2 (a service station) for Mr. Donlon; she had looked at several service stations trying to find one that had other buildings which would produce enough rent to give Mr. Donlon free rent so that he could earn a livelihood for them; the property would offer him security, and she did not intend to sell the property. Under the evidence the court might have found that one-half of the down payment was a gift to Mr. Donlon.

In the present case, Mrs. Donlon testified further that at the time of the marriage she owned cash and property of the value of approximately $68,000; after the marriage she told Mr. Donlon that she wanted to buy and sell real property and she would put the property in joint tenancy but it would be her property, and if she died the property would be his, and if she made money it would be her money but he would not be involved in any losses. She also testified that she told him that it was her gamble but she thought it would be safe because he had a secure position (employed as a service salesman by an automobile company), and she put it in joint tenancy because (otherwise) he would have to sign quitclaim deeds; when she suggested selling a house and getting other property he told her to go ahead; he agreed that if she made money it would be her money. She bought several parcels of property and took titles in joint tenancy. Some of the parcels were sold. Mr. and Mrs. Donlon testified to the effect that Mr. Donlon turned his salary checks over to Mrs. Donlon who placed them in a joint tenancy bank account; Mrs. Donlon also placed some of her money in that bank account; when Mr. Donlon was not employed by others he did repair and maintenance work on property held in joint tenancy. Under the evidence the court might have found that the parties agreed that, in consideration of contributions made by each party for the benefit of both parties, parcel 2 would be owned in joint tenancy with all the characteristics of such an estate.

 ██ Irrespective of the source of the down payment (whether a gift by one party or unequal contributions by the parties), since it is conceded that Parcel 2 is owned by the parties as joint tenants, the rights of the parties with respect to the down payment on the joint tenancy property are identical and coextensive and Mr. Donlon is not required to account to Mrs. Donlon with respect to the down payment.

Appellant cites *Mercola* v. *Chester*, 97 Cal.App.2d 140 [217 P.2d 32], *Higgins* v. *Eva*, 204 Cal. 231 [267 P. 1081] and *Ventre* v. *Tiscornia*, 23 Cal.App. 598 [138 P. 954] in support of her contention that she is entitled to one-half of the down payment of $9,000. In those cases the parties owned the property as *tenants in common* and not as joint tenants. Therefore those cases are not applicable here.

Appellant contends further that costs should not have been allowed in the interlocutory judgment. This contention is sustained. ██ In a partition action costs "may not be allowed until the final judgment is entered and have no proper

place in the interlocutory decree." *Elbert, Ltd.* v. *Federated Income Properties,* 120 Cal.App.2d 194, 209 [261 P.2d 743].)

The interlocutory judgment is modified by striking therefrom the portion awarding $66.55 costs to plaintiff. The interlocutory judgment, as so modified, is affirmed. Respondent to recover his costs on appeal.

Shinn, P. J., and Vallée, J., concurred.